**Opinion filed April 23, 2015**



# In The

# Eleventh Court of Appeals

_____

## No. 11-13-00127-CR

_____

## DONALD JAMES MYART, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 380th District Court**

**Collin County, Texas**

**Trial Court Cause No. 380-80194-2013**

## M E M O R A N D U M   O P I N I O N

Donald James Myart, Jr., appeals his jury conviction for assault of a public servant. The trial court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years. The trial court also assessed payment of Appellant's court-appointed attorney's fees against Appellant in the trial court's judgment as a part of court costs. In two issues

on appeal, Appellant argues that the trial court erred when it refused to submit definitions of "voluntary encounter" and "detention" in the jury charge and that the trial court abused its discretion when it assessed payment of court-appointed attorney's fees against Appellant. We modify the trial court's judgment to delete the assessment of court-appointed attorney's fees against Appellant, and as modified, we affirm.

*Background Facts*

On September 17, 2010, Officer Roy Jenkins of the Dallas Police Department was dispatched to an apartment complex for a "civil standby." Angela Jensen, the apartment manager, received a call about a couple in an upstairs apartment. The couple had been fighting, and the girlfriend was attempting to remove her things from the apartment.

Upon his arrival, Officer Jenkins was informed by Jensen about the disturbance. Officer Jenkins intended to go to the upstairs apartment to find out from the boyfriend what had transpired. Appellant, who is a downstairs neighbor, said that he wanted to go to the upstairs apartment prior to Officer Jenkins doing so. Appellant also said that he knew the boyfriend. Appellant was attempting to go upstairs when Officer Jenkins "told him not to go upstairs because [Officer Jenkins] needed to speak first with the resident upstairs." Officer Jenkins asked for Appellant's name, and Appellant refused to give his name. Appellant also refused to give Officer Jenkins his identification.

Sergio Gonzalez, the maintenance supervisor at the apartment complex, saw Officer Jenkins walk toward Appellant. He said that Officer Jenkins attempted to reach out and grab Appellant. Gonzalez saw Appellant push Officer Jenkins off the stairs. Officer Jenkins warned Appellant, "I'm going to mace you if you don't come down." Officer Jenkins then sprayed Appellant in the face with pepper spray.

2

Gonzalez testified that Appellant "bull rushed [Officer Jenkins], grabbed him from his belt, picked him up, and slammed him." Appellant picked up Officer Jenkins approximately five feet off the ground and threw him onto concrete. Officer Jenkins lost consciousness when he hit the concrete. Gonzalez saw Appellant hit Officer Jenkins before Gonzalez pushed Appellant off Officer Jenkins. Jensen then grabbed Officer Jenkins and dragged him to his police car. Backup officers arrived shortly thereafter. Because of the injuries that he sustained, Officer Jenkins has no recollection of how he was injured.

Appellant requested a directed verdict because "the State has not proven that this was a valid stop, a valid detention. It doesn't look like it was a detention of any sort. It looked like it went straight from a voluntary encounter to pepper spraying." The trial court denied the motion, stating that "whether there was a valid detention or arrest, it's a question of fact and that the jury should be charged on those issues of fact." However, the trial court subsequently did not submit an instruction pertaining to illegally obtained evidence in the jury charge for the following reason: "I believe that the question before the jury is not whether evidence was illegally obtained because of an unlawful detention. I think the question before the jury is whether the use [of] force in this case was justified or not." *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005).

*Analysis*

In his first issue, Appellant contends that the trial court erred by overruling his request to include definitions for "voluntary encounter" and "detention" in the jury charge. By seeking to have these terms defined, it appears that Appellant sought to rely on the law of search and seizure to argue that Officer Jenkins's actions were

3

not legally justified.[1] Appellant acknowledged that he assaulted Officer Jenkins, but he argued to the jury that he was justified in doing so because Officer Jenkins's actions were unlawful.

In reviewing a jury-charge issue, we must first determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, then we analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453–54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error was not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). To obtain reversal for jury-charge error, Appellant must have suffered actual harm, not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Appellant was charged under section 22.01 of the Texas Penal Code. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West 2011). Pursuant to the Penal Code, the jury charge instructed the jury that "[o]ur law provides that a person commits an offense if he intentionally, knowingly, or recklessly causes bodily injury to a person he knows is a public servant while the public servant is lawfully discharging an official duty." The charge also included instructions on the law of self-defense and the law of use of force by a peace officer. *See id.* § 9.31(a), (c). The charge did not

---

[1] There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). A consensual encounter "takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2013). "An encounter is no longer consensual when an officer, through physical force or a showing of authority, has restrained a citizen's liberty." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011).

include the terms "voluntary encounter" and "detention." However, Appellant asked the trial court to provide the jury with the definitions of these terms. In making this request, Appellant did not provide a specific definition for these terms to the court. The trial court denied the request.

If a term is statutorily defined, the trial court must submit the statutory definition in the charge to the jury. *Willis v. State*, 802 S.W.2d 337, 342 (Tex. App.—Dallas 1990, pet. ref'd). However, if a word or phrase has not been statutorily defined, the trial court is not required to provide specific definitions. *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009); *Willis*, 802 S.W.2d at 342. In the absence of a statutory definition, words are to be taken and understood in their common and ordinary meanings. *Gardner v. State*, 306 S.W.3d 274, 302 (Tex. Crim. App. 2009); *Smith*, 297 S.W.3d at 275. Jurors are presumed to know and apply such common and ordinary meanings. *Gardner*, 306 S.W.3d at 302–03.

The terms "voluntary encounter" and "detention" are not statutorily defined. Accordingly, the trial court was not required to define either phrase in the charge to the jury. *Gardner*, 306 S.W.3d at 302; *Smith*, 297 S.W.3d at 275. Furthermore, these terms were not material to the jury's deliberations because these terms were not used in the jury charge. Thus, the trial court did not err when it refused Appellant's request for these terms to be defined. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court abused its discretion in assessing Appellant's court-appointed attorney's fees against Appellant as part of court costs when Appellant had previously been found indigent and no evidence was presented suggesting that his financial situation had changed. We note at the outset that the State has agreed with Appellant's contention that the assessment of attorney's fees should be struck from the trial court's judgment.

5

The record establishes that court-appointed counsel represented Appellant at trial and on appeal. As noted by the Court of Criminal Appeals in *Wiley v. State*, 410 S.W.3d 313 (Tex. Crim. App. 2013):

> The necessary procedure for ordering formerly indigent defendants to pay attorney fees is governed by Texas Code of Criminal Procedure article 26.05(g). Under this article, once a defendant is declared indigent, a trial court may order a defendant to pay for the costs of "legal services provided"—but only if it first determines that the "defendant has financial resources that enable him to offset in part or in whole the costs[.]" A defendant who has previously been found indigent is presumed to remain indigent unless there is a "material change" in his financial status, and in the absence of any indication in the record that his financial status has in fact changed, the evidence will not support an imposition of attorney fees.

410 S.W.3d at 317 (internal citations omitted). Thus, court-appointed attorney's fees cannot be assessed against a defendant who has been determined to be indigent unless there is proof and a finding by the trial court that the defendant is no longer indigent. *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013); *Mayer v. State*, 309 S.W.3d 552, 555–56 (Tex. Crim. App. 2010). In this case, the record contains no such proof or finding. Accordingly, we sustain Appellant's second issue.

The trial court's judgment does not specify a dollar amount of court-appointed attorney's fees assessed against Appellant. Instead, the judgment provides as follows: "It is further ORDERED that the cost to Collin County for the payment of this defendant's court-appointed attorney, if any, is taxed against this defendant as court cost. The District Clerk is granted leave to amend the court cost to reflect this amount without the necessity of a further order." Pursuant to our disposition of Appellant's second issue, we modify the trial court's judgment to delete this provision.

*This Court's Ruling*

The judgment of the trial court is modified to delete: "It is further ORDERED that the cost to Collin County for the payment of this defendant's court-appointed attorney, if any, is taxed against this defendant as court cost.  The District Clerk is granted leave to amend the court cost to reflect this amount without the necessity of a further order."  As modified, the judgment of the trial court is affirmed.

JOHN M. BAILEY

JUSTICE

April 23, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.